UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

The Sanibel Diamond Store, LLC,          Case No. 9:13-bk-15195-FMD
                                    Chapter 11

       Debtor.
_____/

**SUPPLEMENTAL FINDINGS OF FACT AND
CONCLUSIONS OF LAW TO COURT'S ORDER
GRANTING DEBTOR'S EMERGENCY MOTION TO
<u>COMPEL THE CITY OF SANIBEL TO COMPLY WITH SALE ORDER</u>
(Doc. No. 98)**

THIS CASE came before the Court on February 21, 2014, for an evidentiary hearing on the *Debtor's Emergency Motion to Compel the City of Sanibel to Comply with the Order Authorizing Debtor's Motion for Entry of Order Pursuant to Bankruptcy Code Sections 105 and 363 Authorizing Debtor to (A) Enter into the Sale Promotion Consulting Agreement with the Silverman Consultants, LLC for Liquidation of Assets, (B) Authorize the Debtor to Conduct the Bankruptcy Reorganization Sale, (C ) Establish Procedures in Connection with the Bankruptcy Reorganization Sale, and (D) Granting Ancillary and Other Related Relief* (the "Motion to Compel").[1]

Charles Phoenix, Esq., appeared on behalf of the City of Sanibel (the "City") and advised the Court that his appearance was limited solely to object to the proceedings with respect to the City on notice and due process grounds, but that the City did not otherwise submit to the Court's jurisdiction. Joseph Trunkett, Esq., appeared on behalf of the Debtor. Richard Johnston, Esq., appeared on behalf of creditor Myles Alpert.

---

[1] Doc. No. 80.

At the conclusion of the hearing, the Court overruled the City's objections and granted the Debtor's Motion to Compel. Thereafter, the Court entered its *Order Granting Debtor's Emergency Motion to Compel the City of Sanibel to Comply with the Order Authorizing Debtor's Motion for Entry of Order Pursuant to Bankruptcy Code Sections 105 and 363 Authorizing Debtor to (A) Enter into the Sale Promotion Consulting Agreement with the Silverman Consultants, LLC for Liquidation of Assets, (B) Authorize the Debtor to Conduct the Bankruptcy Reorganization Sale, (C) Establish Procedures in Connection with the Bankruptcy Reorganization Sale, and (D) Granting Ancillary and Other Related Relief* (the "Order").[2] The Order expressly provided that the Court would supplement the Order with additional findings of fact and law. Accordingly, the Court hereby supplements the Order with the following findings of fact and conclusions of law.

## FINDINGS OF FACT

A.     The Debtor operates a retail jewelry store in the City of Sanibel, Florida. On November 15, 2013, the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.[3] Shortly thereafter, the Debtor filed an *Emergency Motion for Sanctions and to the Enforce the Automatic Stay against Myles Alpert*.[4] The Debtor sought sanctions against Mr. Alpert, a judgment creditor, for his failure to return inventory, valued at over $500,000.00 wholesale, which Mr. Alpert had seized under a writ of replevin issued by the Circuit Court in and for Lee County, Florida. Ultimately, in late November 2013, the Debtor and Mr. Alpert reached an agreement concerning the return of the inventory to the Debtor and the Debtor's continued business operations.[5]

---

[2] Doc. No. 98.
[3] Unless otherwise stated, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*
[4] Doc. No. 8.
[5] Doc. No. 47.

B.      On January 20, 2014, the Debtor filed an *Emergency Motion for Entry of Order Pursuant to Bankruptcy Code Sections 105 and 363 Authorizing Debtor to (A) Enter into the Sale Promotion Consulting Agreement with the Silverman Consultants, LLC for Liquidation of Assets, (B) Authorize the Debtor to Conduct the Bankruptcy Reorganization Sale, (C) Establish Procedures in Connection with the Bankruptcy Reorganization Sale, and (D) Granting Ancillary and Other Related Relief* (the "Sale Motion").[6] In connection with the Sale Motion, the Debtor's attorney filed a *Certification of Necessity of Request for Emergency Hearing*, in which it was represented that there existed a true necessity for an emergency hearing because

> [T]he tourist season on Sanibel Island only lasts a few months. Any delay in the start date of the proposed liquidation sale may significantly decrease the sale revenues and payments to creditors under the chapter 11 plan to be proposed by the debtor.[7]

C.      The certificate of service attached to the Sale Motion states that the Sale Motion was served by first-class mail upon interested parties, including Kenneth B. Cuyler, Sanibel City Attorney.

D.      On January 21, 2014, the Court scheduled an emergency preliminary hearing on the Sale Motion for January 22, 2014, and directed the Debtor's attorney to serve interested parties.

E.      On January 21, 2014, Debtor's attorney filed an *Amended Notice of Emergency Hearing* (the "Notice of Hearing"),[8] certifying service of the Notice of Hearing to Kenneth B. Cuyler, Sanibel City Attorney, by first-class mail and by telephonic notice. A copy of the Sale Motion was not attached to the Notice of Hearing.[9]

---

[6] Doc. No. 64.
[7] Doc. No. 65, p. 1.
[8] Doc. No. 67.
[9] Doc. Nos. 67, 87.

F.      The hearing on the Sale Motion commenced January 22, 2014, and continued for further hearing on January 23, 2014.[10] Mr. Alpert appeared through counsel at both hearings in support of the Sale Motion; the City did not appear at either hearing. At the conclusion of the January 23, 2014 hearing, the Court granted the Sale Motion.

G.      On January 27, 2014, the Court entered its *Order Authorizing Debtor's Motion for Entry of Order Pursuant to Bankruptcy Code Sections 105 and 363 Authorizing Debtor to (A) Enter into the Sale Promotion Consulting Agreement with the Silverman Consultants, LLC for Liquidation of Assets, (B) Authorize the Debtor to Conduct the Bankruptcy Reorganization Sale, (C) Establish Procedures in Connection with the Bankruptcy Reorganization Sale, and (D) Granting Ancillary and Other Related Relief* (the "Sale Order").[11]

H.      The Sale Order authorized the Debtor to conduct a liquidation sale, and specifically provided:

> The Sale shall be conducted by the Debtor and the Consultant without the necessity of compliance with any federal, state or local statute or ordinance (other than Safety Laws), lease provision or licensing requirement affecting store closing, going out of business, bankruptcy liquidation, or affecting advertising, *including signs, sign walkers, banners, and posting of signage.*[12]

I.      On January 28, 2014, the Debtor's attorney filed a proof of service of the Sale Order.[13] The proof of service did not indicate that the Sale Order had been served upon the City. On February 3, 2014, the Debtor's attorney filed a *Supplemental Proof of Service* of the Sale Order,[14]

---

[10] The hearing was continued to give the Debtor the opportunity to address a concern raised by the United States Trustee regarding the employment of Silverman Consultants, LLC, as a professional. Prior to the continued hearing, on January 22, 2014, an affidavit was filed to address the issue (Doc. No. 68). Neither creditors nor the City were given notice of the continued hearing.

[11] Doc. No. 71.

[12] Doc. No. 71, p. 8, ¶ 14. (emphasis supplied).

[13] Doc. No. 73.

[14] Doc. No. 78.

certifying that a copy of the Sale Order was served upon Kenneth B. Cuyler, Sanibel City Attorney, by first-class mail.

      J.      On February 7, 2014, the Sanibel Police Department issued a *City Ordinance Violation Notice to Appear* to a sign walker employed by the Debtor to carry a sign on the corner of Periwinkle Way and Palm Ridge Road in Sanibel, Florida (the "Citation").[15] The Citation asserted a violation of section 106-131 of the Code of Ordinances of the City of Sanibel, Florida (the "Sanibel Municipal Code"). The citation stated "Permit required," and contained the following narrative:

> [Sign walker's name] knowingly erected & maintained a temporary sign within right of way without a permit; this occurred at said location.

      K.      On February 11, 2014, the Debtor filed the Motion to Compel; the Court scheduled an emergency telephonic hearing on the Motion to Compel for February 13, 2014.

      L.      On February 11, 2014, the Debtor's attorney filed a *Notice of Emergency Hearing* related to the Motion to Compel.[16] The notice was served by email upon Charles Phoenix, Esq., as counsel for the City, and upon Kenneth B. Cuyler, Esq., Sanibel City Attorney, via first class-mail and facsimile.

      M.      On February 13, 2014, Charles Phoenix, Esq., as counsel for the City, filed a response to the Motion to Compel.[17] The City's position was that the City had not been properly noticed or served with the Sale Motion, the Sale Order, or the Motion to Compel. As a consequence, the City contended that it was denied both substantive and procedural due process in connection with the Sale Motion, the Sale Order, and the Motion to Compel.

      N.      At the February 13, 2014 hearing, counsel for the Debtor, Mr. Alpert, and the City appeared telephonically. The Court considered the City's arguments as to lack of proper notice and

---

[15] Doc. No. 80-3.
[16] Doc. No. 82.
[17] Doc. No. 86; re-filed at Doc. No. 87.

service; the health, safety, and environmental concerns arising from the Debtor's employment of a sign walker; and other issues relating to the signs being used by the Debtor. The Court weighed the City's concerns against the Debtor's argument that a prohibition on the use of a sign walker and other signage would severely impact its ability to maximize the proceeds of the liquidation sale, particularly over the upcoming Valentine's Day and Presidents' Day weekend holiday. In light of the Debtor's offer to limit the sign walker to a location that would not impact upon traffic, pedestrians, or cyclists, as well as the fact that the Citation only referenced a lack of a permit and not the substantive violation of a City ordinance, the Court granted the Motion to Compel on an interim basis for one week and scheduled an evidentiary hearing on February 21, 2014 at 9:00 a.m., to allow the City to present evidence in support of its position.

O.      On February 14, 2014, the Court entered its *Interim Order Granting Debtor's Emergency Motion to Compel the City of Sanibel to Comply with the Order Authorizing Debtor's Motion for Entry of Order Pursuant to Bankruptcy Code Sections 105 and 363 Authorizing Debtor to (A) Enter into the Sale Promotion Consulting Agreement with the Silverman Consultants, LLC for Liquidation of Assets, etc.* (the "Interim Order").[18] The Interim Order included notice of the evidentiary hearing scheduled for February 21, 2014. Mr. Phoenix, as counsel for the City, received a copy of the Interim Order via CM/ECF.

P.      On February 20, 2014, prior to the evidentiary hearing scheduled for February 21, 2014, and prior to the Court's ruling at that hearing, the City filed a *Motion for Stay Pending Appeal*.[19]

---

[18] Doc. No. 89. The Interim Order permitted the Debtor to use a sign walker between the hours of 9:00 a.m. and 4:00 p.m. daily and prohibited the sign walker from obstructing traffic on the roadway, using the shared use path (pedestrian/bicycle pathway) except to cross the path or access the Debtor's business premises, and from using lights or noise to promote the sale. The Interim Order also authorized the Debtor to place a banner above the Debtor's store front. (Doc. No. 89, p. 3).

[19] Doc. No. 95.

Q.    At the February 21, 2014 hearing, the City again restated its objections to the Sale Order and the Motion to Compel on the basis of lack of notice and improper service. The City argued that it is a unique community within the State of Florida and the United States and that the island on which the City is located is sensitive to a variety of environmental and safety issues.

R.    The City also moved *ore tenus* that the Court take judicial notice of certain provisions of the Sanibel Municipal Code. The Court granted the motion and took judicial notice of the following sections of the Sanibel Municipal Code: 30-62, 30-63, 46-31, 46-33, 106-111, 106-112, 106-113, 106-131, and 106-132.

S.    The only section of the Sanibel Municipal Code referenced in the Citation is section 106-131, which states:

> No person shall erect, maintain, alter or relocate within the city any temporary sign, except temporary real estate signs, temporary political signs, temporary garage sale signs, or temporary construction signs without first obtaining a permit from the city manager, or his designee, as provided for in article II, divisions 2 and 3, of this chapter.

T.    At the February 21, 2014 hearing, the City did not call any witnesses or introduce any evidence regarding the City's custom and practices regarding the enforcement of City ordinances or, specifically, the City's custom and practices with respect to the issuance of permits for signage. Nor did the City introduce any evidence regarding the health, safety, and environmental concerns implicated by the Debtor's employment of a sign walker or usage of other signs.

U.    At the conclusion of the February 21, 2014 hearing, the Court overruled the City's objections and granted the Motion to Compel. Thereafter, the Court entered the Order.[20]

---

[20] In addition to the signage permitted in the Interim Order, the Order allowed the Debtor to park a truck bearing a sign promoting the sale in the parking lot of the Debtor's store during normal business hours.

## CONCLUSIONS OF LAW

1.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding as that term is defined in 28 U.S.C. § 157(b). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.    The relief sought by the Debtor in the Sale Motion is similar to the relief requested by debtor in the case of *In re Borders Group, Inc.*[21] In *Borders,* the bankruptcy court for the Southern District of New York issued an order approving store closing sales. The court's order directed the debtor to send notice of the order to affected local governmental agencies. And, Paragraphs 18.e and 18.f. of the court's order in *Borders* provided a procedure for resolving disputes between the debtor and affected local governmental agencies, stating:

> e. If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB [Going Out of Business] Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

> f. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sales, to the extent that disputes arise during the course of the Sales regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.[22]

---

[21] 2011 WL 3022401 (Bankr. S.D.N.Y. July 21, 2011).
[22] *Id.* at *11.

3.      In *Borders*, the local government agencies did not receive any notice of the order prior to its issuance by the court. However, the court retained jurisdiction to resolve disputes between the debtor and local government authorities regarding the conduct of the approved bankruptcy sales, including the use of sign walkers and banners.

4.      In essence, this Court followed the procedure outlined in *Borders*. Although the hearing on the Sale Motion was scheduled on an emergency basis and with shortened notice to creditors, including the City, when a dispute arose between the Debtor and the City regarding the use of a sign walker and signage, the Court scheduled a hearing on short notice. Although the Court ruled for the Debtor on an interim basis, the Court scheduled a further hearing to allow the City to present evidence on this issue. Accordingly, the Court concludes that notice to the City of the Sale Motion, the Sale Order, and the Motion to Compel was appropriate under the circumstances.

5.      Furthermore, Fed. R. Bankr. P. 9006(d) permits the Court to shorten the time for notice of a hearing. In light of the Debtor's financial circumstances and the need to maximize the proceeds of the liquidation sale during the City's annual tourist "season," the Debtor established cause for the shortened notice of the hearings on both the Sale Motion and the Motion to Compel.

6.      The Court also overrules the City's objection that it was not served properly. Notwithstanding the City's argument that Fed. R. Bankr. P. 7004(b)(6) requires service of process on a local government to be made upon the governmental organization's chief executive officer (in this case, the City's mayor)—and without finding that Rule 7004(b)(6), which governs service of process in adversary proceedings and contested matters,[23] was implicated by the Sale Motion—the Court finds that service of the Sale Motion, the Sale Order, and the Motion to Compel upon

---

[23] Fed. R. Bankr. P. 9014(b).

Kenneth B. Cuyler, Sanibel City Attorney, was appropriate under the circumstances. In any event, the City appeared though counsel at the February 13, 2014 and February 21, 2014 hearings.

7.      The lack of notice and improper service arguments were the focus of the City's opposition to the Sale Order and the Motion to Compel. Nevertheless, at the February 21, 2014 hearing, Mr. Phoenix, on behalf of the City, requested the Court to take judicial notice of various sections of the Sanibel Municipal Code in addition to the Sanibel Municipal Code section on which the Citation was based. To the extent the City objects to the Motion to Compel in reliance on those various Sanibel Municipal Code sections, the Court overrules such an objection because the sections of the Sanibel Municipal Code of which the Court took judicial notice either do not apply, have already been addressed in the Order, or may be waived by the Court.

8.      For example, Sections 30-62 and 30-63 of the Sanibel Municipal Code prohibit loud, disturbing and unnecessary noise, such as yelling and shouting and the shouting and crying of peddlers, hawkers and vendors.[24] But both the Interim Order and the Order provide that the sign walker "may not use lights or noise devices to promote the sale."[25] Accordingly, to the extent these sections even apply to the sign walker, the Court's orders alleviate any concerns that are potentially implicated by those sections.

9.      Sections 46-31 and 46-33 of the Sanibel Municipal Code address unlawful solicitation. However, these sections do not appear to apply to the sign walker because the sign walker does not fall within the definition of a "solicitor" under the Sanibel Municipal Code.[26]

---

[24] Sanibel Municipal Code, sections 30-62; 30-63(4), (9).

[25] Doc. Nos. 89 and 98, ¶ 7(c).

[26] Sanibel Municipal Code, section 46-31 defines "solicitor" as a person who goes from door to door visiting residential dwellings or commercial buildings for the purpose of selling goods or merchandise. The sign walker, however, is limited to standing at the intersection of Periwinkle Way and Palm Ridge Road in Sanibel, and may simply hold a sign promoting the liquidation sale. Doc. Nos. 89 and 98, ¶¶ 5, 6. Accordingly, he is not an itinerant "solicitor" within the meaning of the Sanibel Municipal Code.

10.    Sanibel Municipal Code sections 106-111, 106-112, and 106-113 govern the use of signs within the City's boundaries. Section 106-111(a) makes it unlawful "to erect, cause to be erected, maintain or cause to be maintained, any sign not expressly authorized by, or exempted from, this land development code." However, it is unclear whether this section even applies to the sign walker because the terms "erected" and "maintained" are vague and ambiguous. A reasonable reading of the ordinance could limit its application to only those signs that are placed in the ground (erected) and then left physically unattended for some indefinite period of time (maintained), as opposed to a sign that is being held in the constant physical possession of the sign walker.

11.    Sanibel Municipal Code sections 106-112 and 106-113 do not appear to apply because those ordinances prohibit signs that include or emit ambient light, sounds, odors, or other visible matter such as smoke or steam, and prohibit the placement of signs on any premises without the owner's or legal occupier's permission. As noted above, however, the Court's orders prohibit the sign walker from using any lights or noise devices to promote the sale, and the sign walker has been authorized to stand at a public intersection—not on privately-owned business property.

12.    Finally, Sanibel Municipal Code sections 106-131 and 106-132 address the requirement of a permit and conditions that can be imposed upon the permit's issuance in order to erect or maintain a temporary sign. Notwithstanding the City's contention that the Debtor was required to obtain a permit before it could utilize a sign walker, the Court has the authority under § 105(a) to enter any order that is necessary and appropriate to carry out the provisions of the Bankruptcy Code. The Court has authorized the Debtor to conduct a liquidation sale under § 363. The City did not timely appeal the Sale Order. Appropriate advertising is necessary to maximize the proceeds of the liquidation sale. Accordingly, even if the Sanibel Municipal Code would otherwise

prohibit the use of a sign walker, or require a permit to be obtained, the Court has the authority to waive that condition.

13.     Moreover, the Court afforded the City an opportunity at a final evidentiary hearing to introduce evidence as to its policies and procedures with respect to the issuance of permits allowing the use of signs, the types of signs that are allowed (or are not allowed) by the City, and the health, safety, and environmental concerns implicated by the Debtor's employment of a sign walker or usage of other signs. But the City did not call any witnesses or offer any other evidence on these issues. In the absence of any such evidence, and in view of the fact that the City does allow some commercial signage without requiring a permit,[27] and of the importance of the use of sign walkers, banners, and other advertising to the Debtor's liquidation sale, the Court is persuaded that reasonable signage is appropriate.

14.     These findings of fact and conclusions of law supplement the Order (Doc. No. 98).

Dated:     March 05, 2014
_____.


_____
Caryl E. Delano
United States Bankruptcy Judge



Attorney Joseph Trunkett is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[27] Sanibel Municipal Code section 106-131 allows temporary real estate, political, garage sale, and construction signs to be utilized without requiring a permit.